## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT OTTAWAY, | ) | Civil Action No. 3:21-cv-90 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SAINT FRANCIS UNIVERSITY, | ) | FILED ELECTRONICALLY |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT IN CIVIL ACTION

Plaintiff Brent Ottaway ("Plaintiff" or "Mr. Ottaway") by and through undersigned counsel, files this Complaint in Civil Action stating as follows:

## I. PARTIES

1.      Mr. Ottaway is an adult individual residing in Blair County, Pennsylvania.

2.      Defendant Saint Francis University ("SFU") is a post-secondary educational institution with its primary place of business at 117 Evergreen Drive, P.O. Box 600, Loretto, PA 15940.

## II. JURISDICTION

3.      The jurisdiction of this Court over the matters set forth in this Complaint is set forth at 28 U.S.C. § 1331, 28 U.S.C. § 1332, and at 42 U.S.C. § 2000e-5(f)(3).

## III. VENUE

4.      The events set forth in this Complaint occurred in Cambria County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV. ADMINISTRATIVE EXHAUSTION

5.      On or about December 17, 2019, Mr. Ottaway filed an administrative charge with the

U.S. Equal Employment Opportunity Commission (docketed at 533-2020-00618) alleging, *inter alia*, sex and disability discrimination.

6.      The aforementioned charge further indicated that Mr. Ottaway was the target of retaliatory conduct.

7.      The body of the aforementioned charge further alleged that Mr. Ottaway was the victim of age discrimination.

8.      The aforementioned charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

9.      On February 12, 2021, the EEOC closed out its investigation into Mr. Ottaway's administrative charge and issued a "Right to Sue" notice (attached to this Complaint as "Exhibit A").

10.     The discrimination claims, both under the federal statutes and under the Pennsylvania Human Relations Act ("PHRA"), as set forth in the underlying administrative charge have been exhausted.

## V.  FACTS

11.     Mr. Ottaway was formerly employed as an associate professor of communications by SFU.

12.     Mr. Ottaway is a male and is over forty years of age.

13.     Mr. Ottaway was qualified for his position as an associate professor of communications at SFU.

14.     Mr. Ottaway has two degrees in mass communications and had completed all doctoral course work and comprehensive exams in this area at the Pennsylvania State University ("Penn State").

15.     Mr. Ottaway had taught courses in mass communication at SFU, Penn State, and at West Virginia University.

16.     Mr. Ottaway was granted tenure at SFU in 1997.

17.     While at SFU, Mr. Ottaway served in the Faculty Senate (where he was the first person to be elected president of that body three times), as NCAA Faculty Athletics Representative, and in multiple administrative positions.

18.     Mr. Ottaway served as advisor to the student news outlet and facilitated internships for Communications students.

19.     Mr. Ottaway was also involved in multiple volunteer efforts in the community and conducted numerous community outreach activities, including conducting a seminar for employees at the *Altoona Mirror*.

20.     Mr. Ottaway had previously served as Dean of General Education at SFU.

21.     Mr. Ottaway was diagnosed with prostate cancer in February 2018; because of this diagnosis, he was perceived by his colleagues and superiors at SFU to be disabled.

22.     Even though he had been diagnosed with prostate cancer, Mr. Ottaway continued to teach at SFU.

23.     Mr. Ottaway disclosed the fact of his diagnosis to Donna Menis ("Prof. Menis"), then the Chair of the Department of Communications, Dean Tim Whisler ("Dean Whisler"), and Provost Wayne Powel.

24.     In 2018, Mr. Ottaway also ran for the U.S. House of Representatives while teaching at SFU.

25.     In 2018, SFU, citing purported economic reasons, laid off a number of faculty,

3

including some who were tenured such as Mr. Ottaway.

26.     On July 25, 2018, four SFU administrators–including two deans–were informed of their terminations; the deans were removed from their offices by campus police.

27.     On July 27, 2018, after receiving a telephone call from him, Mr. Ottaway met with the University President, Rev. Malachi Van Tassell ("Fr. Van Tassell").

28.     The newly appointed Vice President of Academic Affairs and the Director of Human Resources were also present at the aforementioned meeting.

29.     During the meeting Mr. Ottaway was told that his position within the Department of Communications was eliminated and that he would be terminated after a final year on the faculty.

30.     Fr. Van Tassell assured Mr. Ottaway that his impending termination was not related to his performance.

31.     Fr. Van Tassell claimed that mass layoffs–pursuant to which Mr. Ottaway was to be terminated–were precipitated by a budget deficit.

32.     Fr. Van Tassell's claims regarding a budgetary shortfall were pretextual, as evidenced by the fact that SFU had sufficient funds to create a food court on campus.

33.     The SFU administration never demonstrated that there was a financial exigency that would require the termination of tenured faculty.

34.     The fact that SFU is still advertising to fill open administrative positions shows that its claim of financial exigency is pretextual.

35.     Indeed, Dean Whisler expressed to Mr. Ottaway his belief that SFU's financial exigencies were exaggerated.

36.     Mr. Ottaway would later learn that SFU's budget shortfall had been exaggerated and

4

was largely attributable to changes in accounting rules.

37.     Mr. Ottaway is older than his two colleagues within the Department of Communications who were retained.

38.     One of the retained faculty members, Kelly Rhodes ("Dr. Rhodes") lacked an academic background in communications and had taught only two out of the twenty-three course offerings within the Communications Department.

39.     Dr. Rhodes's doctorate is in management and organizational leadership (her dissertation was entitled "Corporate Social Responsibility Decision Making in Major League Baseball: A Case Study"), not communications, and was granted by the for-profit University of Phoenix.

40.     Another retained faculty member, Prof. Menis, retired shortly thereafter.

41.     Unlike Dr. Rhodes, Mr. Ottaway holds an undergraduate degree and a master's degree in communications and completed all requirements but the dissertation for a Ph.D. in Mass Communications at Penn State.

42.     Mr. Ottaway had taught eighteen of the Department's twenty-three course offerings (in contrast to Dr. Rhodes's two) while also coordinating internships and advising the student news organization.

43.     Prior to obtaining his master's degree, Mr. Ottaway served as "editor and publisher" of a national magazine with a typical circulation of 60,000 readers per month.

44.     Upon learning of the termination decision, Prof. Menis, then Departmental Chair, expressed surprise at the termination of Mr. Ottaway.

45.     Prof. Menis herself would retire after the Fall 2018 semester, further diminishing the

capacity of the Communications Department.

46.     In the case of Mr. Ottaway normal procedures regarding the termination of tenured faculty were ignored by SFU.

47.     In September-October 2018, the American Association of University Professors ("AAUP") sent multiple letters to Fr. Van Tassell formally protesting SFU's actions, noting that the University's actions were contrary to basic principles of academic freedom and shared governance.

48.     Mr. Ottaway made informal complaints to the SFU administration regarding the conditions of his termination.

49.     After he learned of his termination, Mr. Ottaway's faculty office was moved to a less desirable location.

50.     Mr. Ottaway's employment at SFU ended on or about May 12, 2019, which was the date of commencement and was the end of the Spring 2019 semester.

51.     Since he was a tenured member of the faculty, SFU had, per Article VI, Section 12(D) of the Faculty Handbook (attached to this Complaint as "Exhibit B"), the obligation to offer Mr. Ottaway alternative employment "...in some other area of employment consistent with the faculty member's qualifications."

52.     While Mr. Ottaway was offered a part time position to teach in the Communications Department as an adjunct, this was not a comparable position since it would supply only a fraction of the salary he had been paid previously.

53.     Since the time of his termination, SFU has failed to make any effort to locate alternative employment for Mr. Ottaway.

54.     In August 2019, the position of Director (formerly Dean) of General Education

became vacant; Mr. Ottaway had previously held that position and was qualified to hold that position.

54. The position of Director of General Education is a part-time position; the incumbent is expected to teach one course.

56. Even though he had left the position as Director/Dean, Mr. Ottaway remained involved in general education activities at SFU.

57. SFU could have offered Mr. Ottaway the position of Director of General Education and allowed him to teach in General Education and/or Communications.

58. Alternatively, SFU could have offered to Mr. Ottaway the position of Communications Department Chair upon the sudden retirement of Prof. Menis.

59. Mr. Ottaway had taught far more classes in the Department, and had greater leadership experience, than Dr. Rhodes.

60. Because he was a tenured faculty member, SFU was, and remains, obligated to find alternative employment for Mr. Ottaway in light of the fact that his previous position had been eliminated for purported financial reasons.

61. The ongoing failure of SFU to offer Mr. Ottaway alternative employment constitutes a continuing adverse employment action.

62. The relocation of his office and his ultimate termination also constitute adverse employment actions.

63. Similarly situated faculty who were significantly younger than Mr. Ottaway were not subjected to similar adverse employment actions.

64. Similarly situated faculty who were not diagnosed with cancer were not subjected to

adverse employment actions similar to those experienced by Mr. Ottaway.

65.     Mr. Ottaway was singled out for adverse treatment and action on account of his age, perceived disability, and/or sex.

66.     Mr. Ottaway was also subject to retaliation in the form of the aforementioned adverse treatment and action because he engaged in protected activities, including his complaints to the SFU administration regarding the terms of his termination.

67.     Mr. Ottaway demands a jury trial.

## VI.  COUNTS

### COUNT I: DISCRIMINATION ON THE BASIS OF SEX
### VIOLATION OF TITLE IX, 20 U.S.C. § 1681 et seq.

68.     The preceding paragraphs are incorporated as if set forth at length herein.

69.     Title IX prohibits educational institutions that receive funds from the federal government from engaging in discrimination on the basis of sex.

70.     Based upon information and belief, SFU is an educational institution that receives funding from the federal government.

71.     Mr. Ottaway is a male and, as such, is a member of a class protected by Title IX.

72.     Mr. Ottaway was qualified for his employment at SFU.

73.     Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

74.     Dr. Rhodes–a less qualified female faculty member–was retained over Mr. Ottaway.

75.     The facts of his termination were compounded by the fact that Mr. Ottaway's office was relocated to a less favorable location.

76.     Mr. Ottaway was subjected to a further adverse employment action when he was passed over for the position of Director of General Education, a position that he had held previously.

77.     Less qualified female faculty members–such as Dr. Rhodes–were not subjected to similar adverse employment actions.

78.     Mr. Ottaway was subjected to multiple adverse employment actions on account of his gender.

79.     Responsible SFU administrators were aware of this discriminatory action.

80.     Mr. Ottaway seeks all remedies and damages permitted under Title IX including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT II: DISCRIMINATION ON THE BASIS OF SEX
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.

81.     The preceding paragraphs are incorporated as if set forth at length herein.

82.     Mr. Ottaway is a male and, as such, is a member of a class protected by Title VII.

83.     Mr. Ottaway was qualified for his employment at SFU.

84.     Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

85.     Dr. Rhodes–a less qualified female faculty member–was retained over Mr. Ottaway.

86.     The fact of his termination was exacerbated by the fact that Mr. Ottaway's office was relocated to a less favorable location.

87.     Mr. Ottaway was subjected to a further adverse employment action when he was passed over for the position of Director of General Education, a position that he had held previously.

88.     Less qualified female faculty members–such as Dr. Rhodes–were not subjected to similar adverse employment actions.

89.     Mr. Ottaway was subjected to multiple adverse employment actions on account of his gender.

90.     Mr. Ottaway seeks all remedies and damages permitted under Title VII including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT III: DISCRIMINATION ON THE BASIS OF PERCEIVED DISABILITY VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111 et seq.**

91.     The preceding paragraphs are incorporated as if set forth at length herein.

92.     The disclosures of his prostate cancer diagnosis to his colleagues and to SFU administrators contributed to a perception at SFU that Mr. Ottaway was disabled.

93.     Perceived disability is a protected class under the Americans with Disabilities Act ("ADA").

94.     Mr. Ottaway was qualified for his employment at SFU.

95.     Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

96.     Less qualified faculty members who were not perceived as being disabled–such as Dr. Rhodes–were retained over Mr. Ottaway.

97.     The fact of his termination was compounded by the fact that Mr. Ottaway's office was relocated to a less favorable location.

98.     Mr. Ottaway was subjected to a further adverse employment when he was passed over

for the position of Director of General Education, a position that he had held previously.

99.     Less qualified faculty members who were not disabled or perceived to be disabled were not subjected to similar adverse employment actions.

100.    Mr. Ottaway was subjected to multiple adverse employment actions on account of the fact that he was perceived as being disabled.

101.    Mr. Ottaway seeks all remedies and damages permitted under the ADA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT IV: DISCRIMINATION ON THE BASIS OF AGE
VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §
621 et seq.**

102.    The preceding paragraphs are incorporated as if set forth at length herein.

103.    Mr. Ottaway is over forty years of age and, as such, is a member of the class protected by the Age Discrimination in Employment Act ("ADEA").

104.    Moreover, Mr. Ottaway was diagnosed with prostate cancer, a condition commonly associated with advancing age.

105.    Mr. Ottaway was qualified for his employment at SFU.

106.    Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

107.    Younger, less qualified faculty members–such as Dr. Rhodes–were retained over Mr. Ottaway.

108.    The fact of his termination was compounded by the fact that Mr. Ottaway's office was relocated to a less favorable location.

109.    Mr. Ottaway was subjected to a further adverse employment action when he was passed over for the position of Director of General Education, a position that he had held previously.

110.    Younger and less qualified faculty members were not subjected to similar adverse employment actions.

111.    Mr. Ottaway was subjected to multiple adverse employment actions on account of the fact that he was perceived as being disabled.

112.    Mr. Ottaway seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT V: RETALIATION**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111 et seq.**

113.    The preceding paragraphs are incorporated as if set forth at length herein.

114.    The ADA prohibits employers from retaliating against employees who complain of discrimination on the basis of disability or on the basis of perceived disability.

115.    Mr. Ottaway engaged in actions protected by the ADA when he complained of the discriminatory nature of his termination.

116.    SFU retaliated against Mr. Ottaway when it failed to offer him the position of Director of General Education.

117.    Mr. Ottaway was qualified to fill the position of Director of General Education.

118.    The denial of the position of Director of General Education constitutes an adverse employment action.

119.    Mr. Ottaway seeks all remedies and damages permitted under the ADA, including,

but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT VI: RETALIATION
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 et seq.

120.  The preceding paragraphs are incorporated as if set forth at length herein.

121.  The ADEA prohibits employers from retaliating against employees who complain of discrimination on the basis of age.

122.  Mr. Ottaway engaged in actions protected by the ADEA when he complained of the discriminatory nature of his termination.

123.  SFU retaliated against Mr. Ottaway when it failed to offer him the position of Director of General Education.

124.  Mr. Ottaway was qualified to fill the position of Director of General Education.

125.  The denial of the position of Director of General Education constitutes an adverse employment action.

126.  Mr. Ottaway seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT VII: DISCRIMINATION ON THE BASIS OF SEX
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 et seq.

127.  The preceding paragraphs are incorporated as if set forth at length herein.

128.  Mr. Ottaway is a male and, as such, is a member of a class protected by the PHRA.

129.  Mr. Ottaway was qualified for his employment at SFU.

13

130.    Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

131.    Dr. Rhodes–a less qualified female faculty member–was retained over Mr. Ottaway.

132.    The facts of his termination was exacerbated by the fact that Mr. Ottaway's office was relocated to a less favorable location.

133.    Mr. Ottaway was subjected to a further adverse employment when he was passed over for the position of Director of General Education, a position that he had held previously.

134.    Less qualified female faculty members–such as Dr. Rhodes–were not subjected to similar adverse employment actions.

135.    Mr. Ottaway was subjected to multiple adverse employment actions on account of his gender.

136.    Mr. Ottaway seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT VIII: DISCRIMINATION ON THE BASIS OF PERCEIVED DISABILITY VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 et seq.**

137.    The preceding paragraphs are incorporated as if set forth at length herein.

138.    The disclosures of his prostate cancer diagnosis to his colleagues and to SFU administrators gave rise to a perception at SFU that Mr. Ottaway was disabled.

139.    Perceived disability is a protected class under the PHRA.

140.    Mr. Ottaway was qualified for his employment at SFU.

141.    Mr. Ottaway was subjected to an adverse employment action when he was terminated

14

from his position as a tenured faculty member in the Communications Department.

142.    Less qualified faculty members who were not perceived as being disabled–such as Dr. Rhodes–were retained over Mr. Ottaway.

143.    The fact of his termination was compounded by the fact that Mr. Ottaway's office was relocated to a less favorable location.

144.    Mr. Ottaway was subjected to a further adverse employment when he was passed over for the position of Director of General Education, a position that he had held previously.

145.    Less qualified faculty members who were not perceived to be disabled were not subjected to similar adverse employment actions.

146.    Mr. Ottaway was subjected to multiple adverse employment actions on account of the fact that he was perceived as being disabled.

147.    Mr. Ottaway seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT IX: DISCRIMINATION ON THE BASIS OF AGE
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 et seq.

148.    The preceding paragraphs are incorporated as if set forth at length herein.

149.    Mr. Ottaway is over forty years of age and, as such, is a member of the class protected by the PHRA.

150.    Moreover, Mr. Ottaway was diagnosed with prostate cancer, a condition commonly associated with advancing age.

151.    Mr. Ottaway was qualified for his employment at SFU.

15

152.    Mr. Ottaway was subjected to an adverse employment action when he was terminated from his position as a tenured faculty member in the Communications Department.

153.    Younger and less qualified faculty members–such as Dr. Rhodes–were retained over Mr. Ottaway.

154.    The fact of his termination was compounded by the fact that Mr. Ottaway's office was relocated to a less favorable location.

155.    Mr. Ottaway was subjected to a further adverse employment when he was passed over for the position of Director of General Education, a position that he had held previously.

156.    Younger and less qualified faculty members were not subjected to similar adverse employment actions.

157.    Mr. Ottaway was subjected to multiple adverse employment actions on account of the fact of his age.

158.    Mr. Ottaway seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT X: RETALIATION
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 et seq.

159.    The preceding paragraphs are incorporated as if set forth at length herein.

160.    The PHRA prohibits employers from retaliating against employees who complain of age, disability, and/or perceived disability discrimination.

161.    Mr. Ottaway engaged in actions protected by the PHRA when he complained of the discriminatory nature of his termination.

16

162.    SFU retaliated against Mr. Ottaway when it failed to offer him the position of Director of General Education.

163.    Mr. Ottaway was qualified to fill the position of Director of General Education.

164.    The denial of the position of Director of General Education constitutes an adverse employment action.

165.    Mr. Ottaway seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT XI: BREACH OF CONTRACT
### VIOLATION OF PENNSYLVANIA COMMON LAW

166.    The preceding paragraphs are incorporated as if set forth at length herein.

167.    In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must first plead the existence of a contract (including its essential terms), a breach of the contract on the part of the defendant, and resultant damages.

168.    Under Pennsylvania law, an internal employee handbook may constitute a binding contract between an employer and an employee.

169.    At SFU, the terms and conditions of the employment of tenured faculty member is found in the Faculty Handbook.

170.    Mr. Ottaway was a tenured member of the faculty.

171.    SFU failed to adhere with the terms and conditions set forth in the Faculty Handbook with respect to the termination of tenured faculty.

172.    Per Article VI, Section 12(D) of the SFU Faculty Handbook, "[i]f tenure is to be

terminated because of financial necessity on the part of the university, it is incumbent on the institution to show the existence of such necessity for dismissal.  Should any faculty member's services be terminated, the faculty member shall receive one year's notice of termination of service, or in lieu of such notice, an amount of money equal to the faculty member's last year's contractual salary.  When appropriate, the university will make every reasonable effort to retain the faculty member in some other area of employment consistent with the faculty member's qualifications."

173.    Even though SFU claimed that it terminated Mr. Ottaway on account of financial necessity, it failed to demonstrate such exigency and, as a consequence, breached the contractual terms set forth above.

174.    SFU's claim of financial exigency is suspect in light of the fact that it had "found" money to create an on-campus food court.

175.    Moreover, SFU failed to make any reasonable attempt to retain Mr. Ottaway when it failed to offer him the position of Director of General Education, a position that he had held previously.

176.    The additional failure of SFU to offer the position of Chair of the Communications Department constitutes another adverse employment action.

177.    Mr. Ottaway suffered damages, including, but not limited to, economic damages in the form of lost salary and benefits, as a consequence of SFU's breach of the contractual terms.

178.    Mr. Ottaway seeks all damages available to him under Pennsylvania law for breach of contract.

## COUNT XII: BREACH OF CONTRACT
## VIOLATION OF PENNSYLVANIA COMMON LAW

179.    The preceding paragraphs are incorporated as if set forth at length herein.

180.    In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must first plead the existence of a contract (including its essential terms), a breach of the contract on the part of the defendant, and resultant damages.

181.    Under Pennsylvania law, an internal employee handbook may constitute a binding contract between an employer and an employee.

182.    At SFU, the terms and conditions of the employment of tenured faculty member is found in the faculty handbook.

183.    Mr. Ottaway was a tenured member of the faculty.

184.    Article XI, Section 1 of the Faculty Handbook (attached to this Complaint as "Exhibit C") guarantees academic freedom to members of the SFU Faculty, reading in part that "[r]elated to academic freedom is the responsibility of the faculty member to participate in the formation of academic policy according to the procedures established by the University."

185.    The policy then proceeds to indicate that SFU "respects" the viewpoints of faculty with respect to institutional governance.

186.    A faculty leader throughout his career at SFU, Mr. Ottaway vocally expressed opposition to administrative decisions that violated the principle of shared governance or were otherwise detrimental to the university.

187.    Mr. Ottaway became known as an outspoken faculty member willing to publicly challenge the University administration, as when he argued on a local television news program

19

against the abrupt decision by Fr. Van Tassell's predecessor as University president (Fr. Gabriel Zeiss) to cancel a scheduled (and paid-for) appearance by Pulitzer-Prize-winning writer Ellen Goodman ("Ms. Goodman") because of her pro-choice stance on abortion, which was entirely irrelevant in the context of her planned speech.

188.    Mr. Ottaway also co-authored (with Kirk Weixel of the SFU Department of English) a letter to the University's Board of Directors arguing that the University's Franciscan mission would be better served by considering a lay president instead of limiting the search to shrinking pool of priests of the Franciscan Friars of the Third Order Regular (T.O.R.); such a move would have vastly increased the number of candidates with the educational background, teaching and administrative experience, fund-raising abilities, and sound judgment needed to run a university successfully.

189.    Mr. Ottaway also ran for the U.S. House of Representative as the nominee of the Democratic Party.

190.    When he ran for the U.S. House of Representative as the nominee of the Democratic Party, Mr. Ottaway maintained a pro-choice stance on abortion.

191.    Mr. Ottaway's defense of Ms. Goodman, his call for broadening presidential searches to include women and other non-priests, and his Congressional run were considered by some to be contrary to the espoused "Catholic values" of SFU.

192.    Rather than respect Mr. Ottaway's viewpoints, the University administration targeted him for termination at a convenient time.

193.    The University's action in this respect constitutes a violation of the terms set out in the Faculty Handbook.

194.    The termination of Mr. Ottaway's employment constitutes and adverse employment

action.

195.    Mr. Ottaway suffered damages, including, but not limited to, economic damages in the form of lost salary and benefits, as a consequence of SFU's breach of the contractual terms.

196.    Mr. Ottaway seeks all damages available to him under Pennsylvania law for breach of contract.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.

s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
Jacob M. Simon
PA I.D. No. 202610
1722 Murray Ave., 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
(412) 687-3140 (fax)